**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

FALOSHA MARTIN,
SONIA SEVERINO,
LICHUN HUO,
JOHN DOE (NEW JERSEY),
JOHN DOE (PENNSYLVANIA),
JOHN DOE (FLORIDA),
JOHN DOE (TEXAS), and
JOHN DOE (ILLINOIS)
and JOHN DOES 1-100, on behalf of themselves and
others similarly situated,

              Plaintiffs,

   v.

COLGATE-PALMOLIVE COMPANY,
and TOM'S OF MAINE, INC.

              Defendants.



**CV 15        1214**

Case No.:    MATSUMOTO

**CLASS ACTION COMPLAINT,** LEVY, M.J.

JURY TRIAL DEMANDED

## NATURE OF THE ACTION

1. Plaintiffs, FALOSHA MARTIN, SONIA SEVERINO, LICHUN HUO and JOHN

DOES 1-100, on behalf of themselves and others similarly situated, by and through their

undersigned attorneys, bring this class action against Defendants, COLGATE-PALMOLIVE

COMPANY and its subsidiary, TOM'S OF MAINE, INC. (hereinafter, "TOM'S OF MAINE")

(collectively "Defendants"), for the deceptive practice of marketing their Tom's of Maine®

toothpaste products as "Natural" when they contain non-natural, highly chemically processed

ingredients such as Glycerin and Sodium Lauryl Sulfate.  Glycerin is a chief ingredient in all of the formulations of Tom's of Maine® toothpastes, including the (1) Whitening, (2) Multi-benefit, (3) Fresh Breath, (4) Anticavity, (5) Sensitive, (6) Children's, (7) Fluoride-Free and (8) SLS-Free product lines. Sodium Lauryl Sulfate is a chief ingredient in all formulations but the SLS-Free product line, which explicitly eliminated Sodium Lauryl Sulfate, or SLS, from the formula.

2.  This case is about the deceptive manner in which the Defendants marketed their Products (defined below) to the general public during the Class Period.

3.  The term "natural" only applies to those products that contain no unnatural or synthetic ingredients and consist entirely of ingredients that are only minimally processed.  The Defendants, however, deceptively used the term "natural" to describe products containing ingredients that have been either extensively chemically processed or fundamentally altered from their natural state and thus cannot be considered "minimally processed." The use of the term "natural" to describe such products created consumer confusion and was misleading.  Plaintiffs allege that the Defendants dishonestly described certain products as being "Natural" when, in fact, they were not.

4.  The term "Natural" was clear and prominent on the packaging and advertising of Products. For example, the Children's fluoride-free toothpaste Product in Silly Strawberry flavor has the word "Natural" a total of five times on its packaging: "natural children's toothpaste"; "naturally sourced calcium and silica abrasives"; "natural fruit flavor"; "natural flavor"; "other natural flavor".

5.  By marketing the Products as "Natural," Defendants took wrongful advantage of consumers' strong preference for oral and personal care products made entirely of natural ingredients.  In a survey conducted by the Shelton Group in 2009, 55%, i.e. more  than half, of

the 1,006 consumers surveyed actively looked for greener products in the "personal care products (shampoo, lotion, etc.)"[1].

6.   Defendants profited in this lucrative market for natural products by misleadingly labeling Products as "Natural" and selling them to consumers who sought to purchase products made from ingredients that are found in nature and who were willing to pay more for such Products.

7.   Defendants' Products, however, contained substantial quantities of Glycerin and Sodium Lauryl Sulfate, among other ingredients, which are non-natural and highly processed. This is an especially alarming issue because these ingredients are also found in common household products, such as dishwashing liquids and shampoos, which people would not willingly put into their mouths, let alone ingest. Young children learning to brush their teeth, however, tend to swallow toothpaste prior to learning to spit. Therefore, parents who have been led to believe that Tom's of Maine® toothpaste products are safe to swallow because of the "natural" claims unfortunately do not realize that swallowing the toothpaste is essentially the equivalent of ingesting dishwashing detergent or  shampoo, such as Head & Shoulders, which lists Sodium Lauryl Sulfate as a principle ingredient. The ingredients information for a Head & Shoulders shampoo Product is shown below:

---

[1] *See, e.g.,* Consumers Prefer'100% Natural' Label Over 'Organic', Environmental Leader (Jul. 3, 2009), http://environmentalleader.com/2009/07/03/consumers-prefer-100-natural-label-over-organic (describing EcoPulse market report by Shelton Group) (last visited March 10, 2014).



## head & shoulders

### menthol fresh
pyrithione zinc dandruff shampoo

**Healthy Hair Starts From a Healthy Scalp™**
Advanced formula relieves scalp itch, dryness, irritation and helps prevent flakes while improving hair and scalp health.

**Cooling Sensation for Hair and Scalp**
- for a cool refreshing clean feeling
- dual action formula cleans and cares for the scalp while providing extra conditioners for the hair
- gentle and pH balanced for everyday use even on color treated or permed hair
- the makers of head & shoulders do not manufacture private label brands

**for best results on hair and scalp use head & shoulders conditioners**

### Drug Facts

| Active ingredient | Purpose |
|---|---|
| Pyrithione zinc 1% . . . . . . . . . . . . . . . . . . . . . . | Anti-dandruff |

**Uses** helps prevent recurrence of flaking and itching associated with dandruff.

**Warnings**
**For external use only.**

**When using this product**
- avoid contact with eyes. If contact occurs, rinse eyes thoroughly with water.

**Stop use and ask a doctor if**
- condition worsens or does not improve after regular use of this product as directed.

Keep this and all drugs out of reach of children. If swallowed, get medical help or contact a Poison Control Center right away.

**Directions**
- for best results use at least twice a week or as directed by a doctor.
- for maximum dandruff control, use every time you shampoo.
- wet hair, massage onto scalp, rinse, repeat if desired.

**Inactive Ingredients:** Water, Sodium Laureth Sulfate, Sodium Lauryl Sulfate, Cocamide Mea, Zinc Carbonate, Glycol Distearate, Dimethicone, Cetyl Alcohol, Polyquaternium-10, Fragrance, Magnesium Sulfate, Sodium Benzoate, Magnesium Carbonate Hydroxide, Ammonium Laureth Sulfate, Aloe Barbadensis Leaf, Benzyl Alcohol, Sodium Chloride, Methylchloroisothiazolinone, Methylisothiazolinone, Sodium Xylenesulfonate.

**Questions (or comments)?**
**1-800-717-2413**

MADE IN MEXICO
**and/or imported ingredients**
Dist. by PROCTER & GAMBLE,
Manufactura,
S. de R.L. de C.V.
San Andr´s Atoto No. 326,
Naucalpan de Juarez,
Estado de Mexico, MX

7590002045633

www.headandshoulders.com

99378110

---

## head & shoulders.

pyrithione zinc
dandruff shampoo

IMPROVES HAIR & SCALP
HEALTH GUARANTEED

### sensitive care
with aloe & moisturizers,
soothes sensitive scalps

NET CONTENT
13.5 fl. oz. 400 mL

99378110

8. Glycerin is a factory-produced texturizer that is created by complex processing and does not occur in nature. It is commonly used in processed foods as a sugar substitute, filler and thickening agent.

9. Sodium lauryl sulfate is factory-produced foaming agent that is created by complex processing and also does not occur in nature. It is commonly used in hygiene and cleaning products as a thickening and foaming agent in shampoos, dishwashing liquids, and laundry detergents.

10. Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who, from the applicable limitations period up to and including the present ("Class Period"), purchased for consumption and not resale any of Defendants' Products.

11. Defendants violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, § § 445.901, *et seq.;*
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*
31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
32) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*
33) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*
34) North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*
35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*
36) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*
37) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
38) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*
40) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*
41) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*
42) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*
43) Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*
44) Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*
45) Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
46) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
47) Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*
48) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
49) West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
50) Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
51) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

12. Defendants marketed their Tom's of Maine® toothpaste Products in a way that is

deceptive to consumers under consumer protection laws of all fifty states and the District of

6

Columbia. Defendants have been unjustly enriched as a result of their conduct. For these reasons, Plaintiffs seek the relief set forth herein.

## JURISDICTION AND VENUE

13. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

14. The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

15. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

16. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

17. The Court has personal jurisdiction over Defendants because their Products are advertised, marketed, distributed, and sold throughout New York State; Defendants engaged in the wrongdoing alleged in this Complaint throughout the United States; including in New York State; Defendants are authorized to do business in New York State; and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants are engaged in substantial and not isolated activity within New York State.

18. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiffs FALOSHA MARTIN, and SONIA SEVERINO are citizens of New York and have purchased the Products from Defendants in this District. Moreover, Defendants distributed, advertised, and sold the Products, which are the subject of the present Complaint, in this District.

## PARTIES

19. Plaintiff FALOSHA MARTIN is, and at all times relevant hereto has been, a citizen of the State of New York and resides in Bronx County. During the Class Period, Plaintiff MARTIN purchased numerous Tom's of Maine® toothpastes, including the Fluoride-Free Antiplaque & Whitening toothpaste in peppermint, for personal consumption within the State of New York. Plaintiff MARTIN purchased the Products from stores located in Kings County. The purchase price was $6.79 (or more) for an individual adult toothpaste Product. Plaintiff MARTIN purchased the Products at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

20. Plaintiff SONIA SEVERINO is, and at all times relevant hereto has been, a citizen of the State of New York and resides in Bronx County. During the Class Period, Plaintiff SEVERINO purchased Tom's of Maine® toothpastes, including the Whole Care® Fluoride toothpaste, Silly Strawberry Children's Fluoride-Free toothpaste, Silly Strawberry Children's Fluoride toothpaste, and Clean Mint Simply White® Fluoride toothpaste, for personal consumption within the State of New York. Plaintiff SEVERINO purchased the Products from stores located in Kings County. The purchase price was $3.99 (or more) for an individual fluoride children's toothpaste Product, $4.99 (or more) for an individual fluoride-free children's toothpaste Product and $5.79 (or more) for an individual adult toothpaste Product. Plaintiff

SEVERINO purchased the Products at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

21.     Plaintiff LICHUN HUO is, and at all relevant times hereto has been a citizen of the state of California and resides in Pasadena, California. For the last five years, including the twelve-month period prior to filing, Plaintiff LICHUN HUO has purchased the Tom's of Maine® toothpastes, including the Silly Strawberry Children's Fluoride toothpaste and the Outrageous Orange-Mango Children's Fluoride toothpaste Products, for her personal consumption within the State of California. Specifically, Plaintiff LICHUN HUO purchased such Products at the Whole Foods supermarket located at 465 South Arroyo Parkway, Pasadena, CA 91105. The purchase price was $3.50 (or more) for an individual fluoride children's toothpaste. Plaintiff LICHUN HUO purchased the Products at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

22.     Additionally, within the twelve month period prior to filing, Plaintiff LICHUN HUO has purchased a Tom's of Maine® Wicked Cool! Anticavity Fluoride Toothpaste Mild Mint for her personal consumption within the State of Michigan. Specifically, Plaintiff LICHUN HUO purchased such Product at a Target store in West Bloomfield, Michigan. The purchase price was $3.50 (or more) for an individual fluoride children's toothpaste. Plaintiff LICHUN HUO purchased the Product at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

23.     Plaintiff JOHN DOE (TEXAS) is, and at all relevant times hereto has been a citizen of the state of Texas. Plaintiff JOHN DOE (TEXAS) has purchased the Products for personal consumption within the State of Texas. Plaintiff JOHN DOE (TEXAS) purchased the

Products at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

24.    Plaintiff JOHN DOE (FLORIDA) is, and at all relevant times hereto has been a citizen of the state of Florida. Plaintiff JOHN DOE (FLORIDA) has purchased the Products for personal consumption within the State of Florida. Plaintiff JOHN DOE (FLORIDA) purchased the Products at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

25.    Plaintiff JOHN DOE (ILLINOIS) is, and at all relevant times hereto has been a citizen of the state of Illinois. Plaintiff JOHN DOE (ILLINOIS) has purchased the Products for personal consumption within the State of Illinois. Plaintiff JOHN DOE (ILLINOIS) purchased the Products at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

26.    Plaintiff JOHN DOE (PENNSYLVANIA) is, and at all relevant times hereto has been a citizen of the state of Pennsylvania. Plaintiff JOHN DOE (PENNSYLVANIA) has purchased the Products for personal consumption within the State of Pennsylvania. Plaintiff JOHN DOE (PENNSYLVANIA) purchased the Products at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

27.    Plaintiff JOHN DOE (NEW JERSEY) is, and at all relevant times hereto has been a citizen of the state of New Jersey. Plaintiff JOHN DOE (NEW JERSEY) has purchased the Products for personal consumption within the State of New Jersey. Plaintiff JOHN DOE (NEW JERSEY) purchased the Products at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein.

28.    Plaintiffs JOHN DOES 1-100 are, and at all times relevant hereto has been, citizens of the any of the fifty states and the District of Columbia. During the Class Period, Plaintiffs JOHN DOES 1-100 purchased Tom's of Maine toothpastes for personal consumption or household use within the United States. Plaintiffs purchased the Products at a premium price and were financially injured as a result of Defendants' deceptive conduct as alleged herein.

29. Defendant COLGATE-PALMOLIVE COMPANY is a Delaware corporation, with its principal place of business at 300 Park Avenue, New York, NY 10022 and an address for service of process located at C/O C T Corporation System, 111 Eighth Avenue, New York, New York, 10011. COLGATE-PALMOLIVE COMPANY owns more than 84% shares of Defendant TOM'S OF MAINE.

30. Defendant TOM'S OF MAINE, INC. is a Maine corporation, with its principal place of business located at 302 Lafayette Center, Kennebunk, ME, 04043 and lists an agent and address for service of process as James B. Zimpritch, Merrill's Wharf, 254 Commercial Street, Portland, ME 04101.

31. Defendants develop, market and sell oral care and hygiene products throughout the world under various brand names.  Defendants sell oral care and hygiene products under the "Tom's of Maine®" brand name throughout New York as well as the rest of the United States. The advertising for the Products, relied upon by Plaintiffs, was prepared and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through advertising containing the misrepresentations alleged herein. The advertising for the Products was designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiffs and the Class, into purchasing the Products. Defendants own,

manufacture and distribute the Products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

32. Defendants manufacture, market, advertise and sell oral care and hygiene products in the United States and throughout the rest of the world.

33. Defendants market numerous products under their "Tom's of Maine®" brand such as the Products purchased by Plaintiffs.  The Products are a "leading natural products company focused on oral and personal care carrying high quality toothpaste, mouth wash, dental floss, antiperspirant, deodorant, and bar soap products," according to the "About" section on the official Tom's of Maine website (http://www.tomsofmaine.com). The Products are available at most supermarket chains and other retail outlets throughout the United States, including but not limited to Walmart, Costco, Target, Shoprite, Pathmark, Walgreens, and Duane Reade.

34. The Tom's of Maine® website displays the entirety of its oral care Product lines with brief product descriptions on each Product page. The liberal use of the word "Natural" in statements and product descriptions associated with the individual Products further fortified the idea that the Products are natural or, at the very least, minimally processed, as exemplified below:



Toothbrushes     Oral Care     Body Care     Combo Packs

Toothpaste

Whitening

Multi-benefit

Fresh Breath

Anticavity

Sensitive

Children's

Fluoride-Free

SLS-Free

Homepage ▸ Oral Care ▸ Toothpaste ▸ Children's ▸ Silly Strawberry Children's Fluoride-Free Toothpaste

**Silly Strawberry Children's Fluoride-Free Toothpaste**

Item Number: 683093

In Stock
Ships within 1 business day

**$3.99**

Quantity: 1

**Product Description:**

Our Fluoride-Free Toothpaste for Children uses calcium and silica to gently clean, and the delicious real fruit flavor appeals to your child's taste - not artificial sparkles and bubble gum flavors. Because it's fluoride free, you won't have to worry if more toothpaste ends up in your child's tummy than in the sink!

Enlarge/Alternate Images

(No reviews)

Toothbrushes     Oral Care     Body Care     Combo Packs

Toothpaste

Whitening

Multi-benefit

Fresh Breath

Anticavity

Sensitive

Children's

Fluoride-Free

SLS-Free

Homepage ▸ Oral Care ▸ Toothpaste ▸ Children's ▸ Silly Strawberry Children's Fluoride Toothpaste

**Silly Strawberry Children's Fluoride Toothpaste**

Item Number: 683092

In Stock
Ships within 1 business day

**$3.99**

Select flavor:
Silly Strawberry ▾

Quantity: 1

**Product Description:**

Your kids will love the all-natural strawberry taste. You'll love that they're brushing each day with the only natural kids' fluoride toothpaste ADA accepted to help prevent cavities. Guaranteed your kids will love it or your money back.

Enlarge/Alternate Images

(3 reviews)



Oral Care     Body Care     Combo Packs

**Toothpaste**

Whitening
Multi-benefit
Fresh Breath
Anticavity
Sensitive
Children's
Fluoride-Free
SLS-Free

Homepage » Oral Care » Toothpaste » Sensitive » Wintermint Sensitive Fluoride-Free Toothpaste

**Wintermint Sensitive Fluoride-Free Toothpaste**
Item Number: 683794

In Stock
Ships within 1 business day

**$5.99**

Quantity: 1

**Product Description:**

Tom's of Maine uses the same, FDA-allowed, ingredient to fight tooth sensitivity as the leading brand. We source naturally occurring nitrate ore for our active ingredient Potassium Nitrate, clinically proven to help reduce and relieve your painful sensitivity caused by exposed denin on the surface of your teeth. Some consumers prefer a product without fluoride, which is why we are pleased to offer a fluoride-free version of our sensitive toothpaste!

Enlarge/Alternate Images

(No reviews)

**You Might Also Like:**

Oral Care     Body Care     Combo Packs

**Toothpaste**

Whitening
Multi-benefit
Fresh Breath
Anticavity
Sensitive
Children's
Fluoride-Free
SLS-Free

Homepage » Oral Care » Toothpaste » Anticavity » Peppermint Baking Soda Cavity Protection Fluoride Toothpaste

**Peppermint Baking Soda Cavity Protection Fluoride Toothpaste**
Item Number: 683077

Available for backorder
Ships within 10 business days

Email me when in stock.

**$4.99**

Select flavor:
Peppermint Baking Soda ▾

Quantity: 1



**Product Description:**

Tom's of Maine Natural Cavity Protection Fluoride Toothpaste is ADA Accepted, so you can trust it to help prevent and reduce tooth decay when used as directed. Naturally-sourced fluoride helps remineralize soft spots before they turn into cavities, and it helps strengthen the tooth structure so enamel is more resistant to decay.

Enlarge/Alternate Images

(No reviews)

**You Might Also Like:**

14

35. By representing that Products were "Natural," Defendants sought to capitalize on consumers' preference for natural Products and the association between such Products and a wholesome way of life.  Consumers are willing to pay more for natural Products because of this association as well as the perceived higher quality, health and safety benefits and low impact on the environment associated with products labeled as "Natural."

36. Although Defendants represented the Products as "Natural," they are not because they contain multiple highly processed ingredients, including but not limited to Glycerin and Sodium Lauryl Sulfate.

37. Defendants sell the toothpastes using the deceptive claim "Natural," including, but not limited to, the following toothpaste lines: the (1) Whitening, (2) Multi-benefit, (3) Fresh Breath, (4) Anticavity, (5) Sensitive, (6) Children's, (7) Fluoride-Free and (8) SLS-Free product lines (together, the "Products").

**Tom's of Maine® Toothpastes**

| Product Type | Product Name |
|---|---|
| (1) Whitening | • Fluoride-Free Antiplaque & Whitening Toothpaste*<br>• Spearmint Fluoride-Free Antiplaque & Whitening Gel Toothpaste<br>• Clean Mint Simply White® Trial Size Toothpaste<br>• Botanically Bright Peppermint<br>• Botanically Bright Spearmint<br>• Cinnamint Propolis & Myrrh Fluoride-Free Toothpaste<br>• Clean Mint Simply White® Fluoride Toothpaste*<br>• Sweet Mint Simply White® Fluoride Gel Toothpaste<br>• Sweet Mint Simply White Gel Toothpaste 2 Pack |
| (2) Multi-Benefit | • Whole Care® Fluoride Toothpaste*<br>• Spearmint Fluoride-Free Antiplaque & Whitening Gel Toothpaste<br>• Whole Care® Fluoride Gel Toothpaste<br>• Fluoride-Free Antiplaque & Whitening Toothpaste<br>• Peppermint & Fluoride-Free Antiplaque & Whitening Toothpaste<br>• Soothing Mint Maximum Strength Sensitive Fluoride Toothpaste<br>• Peppermint Whole Care® Fluoride Toothpaste 2 Pack |

| (3) Fresh Breath | • Gingermint Baking Soda with Propolis and Myrrh<br>• Wicked Fresh!™ Fluoride Toothpaste |
|---|---|
| (4) Anticavity | • Clean Mint Simply White® Trial Size Toothpaste<br>• Peppermint Clean & Gentle Fluoride Toothpaste<br>• Whole Care® Fluoride Gel Toothpaste<br>• Whole Care® Fluoride Toothpaste<br>• Clean Mint Simply White® Fluoride Toothpaste<br>• Soothing Mint Maximum Strength Sensitive Fluoride Toothpaste<br>• Peppermint Clean & Gentle Fluoride Toothpaste 2 Pack<br>• Cavity Protection Fluoride Toothpaste<br>• Peppermint Whole Care® Fluoride Toothpaste 2 Pack<br>• Sweet Mint Simply White® Fluoride Gel Toothpaste |
| (5) Sensitive | • Wintermint Sensitive Fluoride-Free Toothpaste<br>• Soothing Mint Maximum Strength Sensitive Fluoride Toothpaste |
| (6) Children's | • Silly Strawberry Children's Fluoride-Free Toothpaste*<br>• Children's Fluoride Toothpaste* (Silly Strawberry)<br>• Silly Strawberry Children Fluoride-Free Toothpaste 2 Pack<br>• Silly Strawberry Children's Fluoride Toothpaste 2 Pack<br>• Outrageous Orange-Mango Children's Fluoride-Free Toothpaste<br>• Outrageous Orange-Mango Children's Fluoride Toothpaste*<br>• Wicked Cool!™ Anticavity Toothpaste*<br>• Wicked Cool!™ Fluoride Free Toothpaste<br>• Toddler's Fluoride-Free Natural Training Toothpaste<br>• Wicked Cool!™ Anticavity Toothpaste 2 Pack<br>• Wicked Cool!™ Fluoride-Free Toothpaste 2 Pack |
| (7) Fluoride-Free | • Spearmint Fluoride-Free Antiplaque & Whitening Gel Toothpaste<br>• Botanically Bright Peppermint<br>• Fluoride-Free Antiplaque & Whitening Toothpaste<br>• Wintermint Sensitive Fluoride-Free Toothpaste<br>• Silly Strawberry Children's Fluoride-Free Toothpaste<br>• Botanically Bright Spearmint Toothpaste<br>• Cinnamint Propolis & Myrrh Fluoride-Free Toothpaste<br>• Peppermint Fluoride-Free Antiplaque & Whitening Toothpaste 2 Pack<br>• Gingermint Baking Soda with Propolis and Myrrh<br>• Silly Strawberry Children Fluoride-Free Toothpaste 2 Pack<br>• Propolis & Myrrh Fluoride-Free Toothpaste |
| (8) SLS-Free | • Peppermint Clean & Gentle Fluoride Toothpaste<br>• Botanically Bright Peppermint<br>• Botanically Bright Spearmint<br>• Peppermint Clean & Gentle Fluoride Toothpaste 2 Pack |

(*) The Products marked with asterisks have been purchased and used by the Plaintiffs and will hereinafter be referred to as the "Purchased Products." The Purchased Products are representative of all of the Products listed.

16

Defendants prominently display the word "Natural" all over their packaging. See exemplar labels from the Antiplaque & Whitening Toothpaste Product below:





The Antiplaque and Whitening Toothpaste description contains the word "natural" four times in three sentences:

> "Embrace the Power of Mother Nature! At Tom's of Maine that means authentic and effective naturally sourced ingredients. We use zinc citrate sourced from zinc – a naturally occurring mineral and xylitol, a natural ingredient derived from birch trees or corn. Plus natural flavoring for a taste that will make you look forward to brushing!"

38. As a result of Defendants' deception, consumers – including Plaintiffs and members of the proposed Class – have purchased Products that claim to be natural. Moreover, Plaintiffs and Class members have paid a premium for the Products over other toothpaste products sold on the market. A sample of other toothpaste products are provided below:

**Children's toothpaste**

| BRAND | QUANTITY | PRICE | SELLER |
|---|---|---|---|
| Crest Kids Hello Kitty Toothpaste, Bubble Gum | 4.2oz | $1.99 | Drugstore.com |
| Crest Pro-Health Stages Anticavity Toothpaste for Kids, Minnie Berry | 4.2oz | $2.99 | Drugstore.com |
| Orajel Bubble Guppies Anticavity Fluoride Toothpaste, 2+ Years, Fin-tastic Fruit | 4.2oz | $3.19 | Drugstore.com |

**Adult toothpastes**

| BRAND | QUANTITY | PRICE | SELLER |
|---|---|---|---|
| Pepsodent Anticavity Toothpaste, Complete Care | 6oz | $1.59 | Drugstore.com |
| Arm & Hammer Dental Care Advance White Extreme Whitening Baking Soda & Peroxide Toothpaste, Fresh Mint | 4.3oz | 2.99 | Drugstore.com |
| Arm & Hammer Dental Care Advance White Breath Freshening Baking Soda Toothpaste, Frosted Mint | 4.3oz | 3.69 | Drugstore.com |

**Definition of Natural**

39. The FDA did not intend to and has repeatedly declined to establish a final rule with regard to a definition of the term "natural" in the context of food labeling. As such, Plaintiff's state consumer protection law claims are not preempted by federal regulations. See *Jones v. ConAgra Foods, Inc.*, 2012 WL 6569393, *6 (N.D. Cal. Dec. 17, 2012). Additionally, the primary jurisdiction doctrine does not apply "because the FDA has repeatedly declined to adopt formal rule-making that would define the word 'natural.'" *Id.* at p. 8.

40. The "FDA has not developed a definition for use of the term natural or its derivatives," but it has loosely defined the term "natural" as a product that "does not contain added color, artificial flavors, or synthetic substances." According to federal regulations, an ingredient is synthetic if it is:

> [a] substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.7 C.F.R. §205.2.

41. Although there is not an exacting definition of "natural" in reference to food, cosmetic or oral care ingredients, there is no reasonable definition of "natural" that includes ingredients that, even if sourced from "nature," are subjected to extensive transformative chemical processing before their inclusion in a product. For example, the National Advertising Division of the Better Business Bureau ("NAD") has found that a "natural" ingredient does not include one that, while "literally sourced in nature (as is every chemical substance), . . . is, nevertheless subjected to extensive processing before metamorphosing into the" ingredient that is included in the final product.

**Artificial Creation of Unnatural Ingredients**

42. It requires multiple processing steps in an industrial environment to transform ____ into Glycerin, therefore, it cannot be described as "natural." A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance." The same report lists several methods of producing Glycerin, each which involve numerous steps that include the use of high temperatures and pressure and purification to get an end product:

| Table 2 Processes for producing glycerin by hydrolysis of fats and oils | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245°C temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counter-flow of water at a pressure of 600 PSI maintained at temperature of 480-495°F. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

43. It also requires multiple processing steps in an industrial environment to transform coconut and/or palm kernel oil into Sodium Lauryl Sulfate, therefore, it cannot be described as "natural." The technical evaluation report on SLS compiled  by the USDA AMS Agricultural Analytics Division of the USDA National Organic Program explains that it is produced and manufactured through the following industrial process:

> SLS is manufactured by a chemical process. Lauryl alcohol (1-dodecanol, $CH_3(CH_2)10CH_2OH$) is the main feedstock and may be obtained by converting (reducing) coconut oil fatty acids into alcohols (HSDB 2002b). A sulfonate group is added to the lauryl alcohol by a sulfation process, in which the alcohol is mixed with a solution of sulfur trioxide ($SO_3$) or chlorosulfonic acid ($ClSO_3H$) (Singer and Tjeerdema 1993). After sulfation, the mixture is neutralized with a cation source, usually sodium hydroxide ($NaOH$), sodium carbonate ($Na_2CO_3$), or sodium bicarbonate ($NaHCO_3$) to form SLS (HSDB 2002a, Singer and Tjeerdema 1993). The product is then purified with one or more solvents (e.g., n-butanol, diethyl ether, ethanol) (Singer and Tjeerdema 1993).

Further, the report explicitly states that "SLS is not created by naturally occurring biological processes (see Evaluation Questions #1 and #2). SLS can be chemically manufactured from naturally occurring coconut oil fatty acids, but these substances are altered to produce SLS."

44. The Products were labeled "Natural" yet contain the non-natural and extensively processed ingredients Glycerin and Sodium Lauryl Sulfate.

45. The "Natural" claims appear on the labels of the Products.  An example is shown below:



46. Within the last twelve months, Plaintiffs purchased Tom's of Maine® toothpaste Products in various formulas. Plaintiffs were attracted to these Products because they prefer to consume and use natural products for health reasons. Plaintiffs believe that all natural products contain only ingredients that occur in nature or are minimally processed and that they would not include Glycerin and Sodium Lauryl Sulfate amongst such ingredients. As a result, the Products with their deceptive "Natural" claims on the Product packaging had no value to Plaintiffs.Defendants marketed the Products as "Natural" to induce consumers to purchase the Products.

**The Federal Food, Drug, and Cosmetic Act**

47. The Federal Food, Drug, and Cosmetic Act (hereinafter, "FDCA"), 21 U.S.C. §§ 301 *et. seq.*, governs the sale of foods, drugs, and cosmetics in the United States. The classification of a product as a food, drug, or cosmetic affects the regulations by which the product must abide. In

22

general, a product is characterized according to its intended use, which may be established, among other ways, by: (a) claims stated on the product's labeling, in advertising, on the Internet, or in other promotional materials; (b) consumer perception established through the product's reputation, for example by asking why the consumer is buying it and what the consumer expects it to do; or (c) the inclusion of ingredients well-known to have therapeutic use, for example fluoride in toothpaste.

48. The FDCA defines drugs, in part, by their intended use, as "articles intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease," or "articles (other than food) intended to affect the structure or function of the body of man or other animals," 21 U.S.C. § 321(g)(1).

49. The FDCA defines cosmetics by their intended use, as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body . . . for cleansing, beautifying, promoting attractiveness, or altering appearance," 21 U.S.C. § 321(i)(1).

50. The FDA has explained that "[s]ome products meet the definitions of both cosmetics and drugs," for example, "when a product has two intended uses" as with an anti-dandruff shampoo," which "is a cosmetic because its intended use is to cleanse the hair," and also "is a drug because of its intended use is to treat dandruff . . . Such products must comply with the requirements for both cosmetics and drugs."

51. Cosmetic and drug manufacturers must comply with federal and state laws and regulations governing labeling oral care products. Among these are the Federal Food, Drug and Cosmetic Act and its labeling regulations, including those set forth in 21 C.F.R. part 101.

52. Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those

claims that might be technically true, although still misleading. If any one representation in the labeling is misleading, the entire food is misbranded. No other statement in the labeling cures a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled.

53. State laws have placed similar requirements as federal laws on drug and cosmetic companies that are designed to ensure that the claims companies are making about their products to consumers are truthful and accurate.

54. Defendants' labeling and advertising of the Products violate various state laws against misbranding. New York State law broadly prohibits the misbranding of drug and cosmetic Products in language identical to that found in regulations promulgated pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq.:

> Pursuant to N.Y. State Education Law § 6815, "A drug shall be deemed misbranded… under circumstances including, but not limited to, any of the following: (1) If its labeling is false or misleading in any particular."

> Pursuant to N.Y. State Education Law § 6818, "Any cosmetic shall be deemed misbranded… under circumstances including, but not limited to, any of the following: (1) If its labeling is false or misleading in any particular."

Similarly, pursuant to California's Sherman Food, Drug and Cosmetics Law, California Health and Safety Code § 111330, "[a]ny drug or device is misbranded if its labeling is false or misleading in any particular" and § 111730, "[a]ny cosmetic is misbranded if its labeling is false or misleading in any particular."

55. Defendants' Products were misbranded under the laws of the fifty states and the District of Columbia because they misled Plaintiffs and Class members about the naturalness of the Products.

56. Although Defendants marketed the Products as "Natural," they failed to also disclose material information about the Products; the fact that they contained unnatural, synthetic, and/or artificial ingredients. This non-disclosure, while at the same time branding the Products as "Natural," was deceptive and likely to mislead a reasonable consumer.

57. A representation that a product is "Natural" is material to a reasonable consumer when deciding to purchase a product. According to Consumers Union, "Eighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."[2]

58. Plaintiffs did, and a reasonable consumer would, attach importance to whether Defendants' Products are "misbranded," i.e., not legally salable, or capable of legal possession, and/or contain highly processed ingredients.

59. Plaintiffs did not know, and had no reason to know, that the Products were not "All Natural."

60. Defendants' Product labeling and misleading website was a material factor in Plaintiffs' and Class members' decisions to purchase the Products. Relying on Defendants' Product labeling and misleading website, Plaintiffs and Class members believed that they were getting Products that were "Natural." Had Plaintiffs known Defendants' Products were highly processed, they would not have purchased them.

---

[2] Notice of the Federal Trade Commission, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 CFR § 260, Dec. 10, 2010, http://www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmental-marketing-claims-project-no.p954501-00289%C2%A0/00289-57072.pdf (last visited January 29, 2015).

61. Defendants' Product labeling as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendants' misrepresentations are part of their systematic Product packaging practice.

62. At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were misbranded as set forth herein, and would not have bought the Products had they known the truth about them.

63. Defendants' false and deceptive labeling is misleading and in violation of FDA and consumer protection laws of each of the 50 states and the District of Columbia, and the Products at issue are misbranded as a matter of law. Misbranded products cannot be legally manufactured, advertised, distributed, held or sold in the United States. Plaintiffs and Class members would not have bought the Products had they known they were misbranded and illegal to sell or possess.

64. As a result of Defendants' misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Products.

65. Plaintiffs and the Class (defined below) have been damaged by Defendants' deceptive and unfair conduct in that they purchased Products with false and deceptive labeling and paid premium prices they otherwise would not have paid over other comparable products that did not claim to be "Natural."

**Defendants Make Misrepresentations in Social Media**

In furtherance of their efforts to deceive customers as to the contents of their Products, Defendants posted have the follow statements in the About section of their popular Facebook page with nearly half a million fans:

> From the natural productss we make to the responsible way we do business, all of us at Tom's of Maine are passionate about healthy, human and environmental goodness.

**Mission**

We try to make people's lives better every day-naturally! We believe truly natural products are better for your body and the environment. That's why you'll never find potentially harmful ingredients in our products and why we'll never test our ingredients or products on animals.

**Company Overview**

It all began back in 1968 when Tom and Kate Chappell moved to Kennebunk, Maine on a mission to simplify their lives. Unable to find natural personal care products, they decided to sell their own. The rest is history.

66. The Tom's of Maine® Facebook page also has numerous past and present environmental cleanup and campaign photos and advertisements to show that they are deeply involved with the Earth, such as:



(https://www.facebook.com/TomsofMaine/photos/pb.270965199371.-
2207520000.1414420936./10152075642084372/?type=3&src=https%3A%2F%2Fscontent-b-
lga.xx.fbcdn.net%2Fhphotos-xpf1%2Ft31.0-
8%2F10013412_10152075642084372_303632775_o.jpg&smallsrc=https%3A%2F%2Fscontent-b-
lga.xx.fbcdn.net%2Fhphotos-xpf1%2Fv%2Ft1.0-
9%2F1972514_10152075642084372_303632775_n.jpg%3Foh%3Dc23eaab37ae086e93b560d88315ad014%26oe%
3D54E54C7F&size=880%2C1000&fbid=10152075642084372)

67. The statements and images above mislead consumers into believing that Defendants' Products are not only better for the planet because they would be supporting a company that focuses so much of its energy on improving the environment, but that the company uses only ingredients that are minimally processed and perhaps even directly cultivated. The Products are not completely natural as Defendants claim -- the Products contain highly processed ingredients that have been fundamentally altered from their actual natural states. Had Plaintiffs known that the representations they relied on herein were false, misleading, deceptive, and unfair, they would not have purchased the Products nor paid the premium price Defendants charged and continue to charge for them.

**Plaintiffs Were Injured as a Result of Defendants' Misleading and Deceptive Conduct**

68. Defendants' labeling as alleged herein is false and misleading and was designed to increase sales of the Products at issue. Defendants' misrepresentations are part of their systematic labeling practice.

69. Plaintiffs and Class members were exposed to Defendants' extensive marketing campaign, including misrepresentations made via social media as stated herein. At the time of purchase, Plaintiffs and Class members read the labels on Defendants' Products, including labels with the "Natural" misbranding.

70. Defendants' labeling claims were a material factor in Plaintiffs and Class members' decisions to purchase the Products. Based on Defendants' claims, Plaintiffs and Class members believed that the Products were a better and healthier choice than other available toothpaste products.

71. Plaintiffs and Class members did not know that the term "Natural" did not refer to the toothpaste Products being entirely natural. Plaintiffs and Class members would not have bought

the purchased Products had they known that the term "Natural" referred to only certain ingredients that were minimally processed.

72. Plaintiffs and Class members were exposed to these misrepresentations prior to purchase and relied on them. As a result of such reliance, Plaintiffs and Class members thought that the Products were preferable to toothpaste products lacking such false and misleading statements. Plaintiffs and Class members would not have bought the purchased products had they not been misled by the "Natural" representation into believing that the Products were better and healthier than they were.

73. At the point of sale, Plaintiffs and Class members did not know, and had not reason to know, that Defendants' Products were misbranded as set forth herein, and would not have bought the Products had they known the truth about them.

74. Reasonable consumers would be, and were, misled in the same manner as Plaintiffs in that a reasonable consumer would believe "Natural" referred to "All Natural" in the context of the Products.

75. As a result of Defendants' misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Products.

76. Defendants' labeling, advertising, and marketing as alleged herein is false and misleading and designed to increase sales of the Products. Defendants' misrepresentations are a part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach important to Defendants' representations in determining whether to purchase the Products at issue. Plaintiffs and Class members would not have purchased Defendants' misbranded Products had they known they were misbranded.

77. Plaintiff and the Class (defined below) have been damaged by Defendants' deceptive and unfair conduct in that they purchased Products with false and deceptive labeling and paid premium prices they otherwise would not have paid over other comparable products that did not claim to be "Natural."

## CLASS ACTION ALLEGATIONS

78. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class):

> All persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

79. Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

80. This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are thousands of Class members. Thus, the Class is so numerous that individual joinder of all Class members is impracticable.

81. Questions of law and fact arise from Defendants' conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

a. whether labeling "Natural" on Products containing multiple highly processed ingredients, including Glycerin and Sodium Lauryl Sulfate, was false and misleading;

b. whether Defendants engaged in a marketing practice intended to deceive consumers by labeling "Natural" on Products containing multiple highly processed ingredients, including Glycerin and Sodium Lauryl Sulfate;

c. whether Defendants deprived Plaintiffs and the Class of the benefit of the bargain because the Products purchased were different than what Defendants warranted;

d. whether Defendants deprived Plaintiffs and the Class of the benefit of the bargain because the Products they purchased had less value than what was represented by Defendants;

e. whether Defendants caused Plaintiffs and the Class to purchase a substance that was other than what was represented by Defendants;

f. whether Defendants caused Plaintiffs and the Class to purchase Products that were artificial, synthetic, or otherwise unnatural;

g. whether Defendants have been unjustly enriched at the expense of Plaintiffs and other Class members by their misconduct;

h. whether Defendants must disgorge any and all profits they have made as a result of their misconduct; and

i. whether Defendants should be barred from marketing the Products as "Natural."

82. Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed

herein.  Plaintiffs purchased Defendants' Products and sustained similar injuries arising out of Defendants' conduct in violation of New York State law.  Defendants' unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  The injuries of the Class were caused directly by Defendants' wrongful misconduct.  In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

83. Plaintiffs will fairly and adequately represent and pursue the interests of the Class and have retained competent counsel experienced in prosecuting nationwide class actions.  Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class.   Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class.  Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

84. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this

forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

85. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

86. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

87. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

88. Defendants' conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

## INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

89. Plaintiffs MARTIN and SEVERINO repeat and reallege each and every allegation contained above as if fully set forth herein and further alleges the following:

90. Plaintiffs FALOSHA MARTIN and SONIA SEVERINO bring this claim on behalf themselves and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General Business Law § 349 ("NY GBL").

91. NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

92. Under the § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 ... claims, it was error.  Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

93. Any person who has been injured by reason of any violation of the NY GBL may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

94. The practices employed by Defendants, whereby Defendants advertised, promoted, and marketed that their Products contain "Natural" ingredients, were unfair, deceptive, and misleading and are in violation of the NY GBL § 349.

95. The foregoing deceptive acts and practices were directed at customers.

96. Defendants should be enjoined from marketing their products as "Natural" as described above pursuant to NY GBL § 349.

97. Plaintiffs, on behalf of themselves and all others similarly situated, respectfully demands a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

98. Plaintiffs MARTIN and SEVERINO repeat and reallege each and every allegation contained above as if fully set forth herein and further alleges the following:

99. Plaintiffs FALOSHA MARTIN and SONIA SEVERINO bring this claim on behalf themselves and the other members of the Class for violations of NY GBL § 349.

100. By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by misbranding their Products as "Natural."

101. The practices employed by Defendants, whereby Defendants advertised, promoted, and marketed that their Products contain "Natural" ingredients were unfair, deceptive, and misleading and are in violation of NY GBL § 349.

102. The foregoing deceptive acts and practices were directed at consumers.

36

103.   Plaintiffs FALOSHA MARTIN, SONIA SEVERINO and the other Class members suffered a loss as a result of Defendants' deceptive and unfair trade acts. Specifically, as a result of Defendants' deceptive and unfair trade acts and practices, Plaintiffs and the other Class members suffered monetary losses associated with the purchase of Products, *i.e.*, the purchase price of the Product and/or the premium paid by Plaintiffs and the Class for said Products.

## COUNT III

### Violations of California's Consumer Legal Remedies Act,<br>Cal. Civ. Code § 1750, *et seq.*

104.   Plaintiff LICHUN HUO realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

105.   Plaintiff LICHUN HUO brings this claim individually and on behalf of the other members of the California Class for Defendants' violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

106.   Plaintiff LICHUN HUO and California Class members are consumers who purchased the Products for personal, family or household purposes. Plaintiff LICHUN HUO and the California Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff LICHUN HUO and the California Class members are not sophisticated experts with independent knowledge of corporate branding, labeling and packaging practices.

107.   Products that Plaintiff LICHUN HUO and other California Class members purchased from Defendants were "goods" within the meaning of Cal. Civ. Code § 1761(a).

108.   Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

37

109.    Defendants violated federal and California law because Defendants' representations in labeling, advertising, and marketing their Products as "Natural" were unfair, deceptive, and misleading.

110.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendants violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents that the Products have characteristics, ingredients, or benefits which they do not have.

111.    Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendants violated and continues to violate Section 1770(a)(9), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

112.    Plaintiff LICHUN HUO and the California Class members are not sophisticated experts about the corporate branding, labeling and packaging practices. Plaintiff LICHUN HUO and the California Class acted reasonably when they purchased the Products based on their belief that Defendants' representations were true and lawful.

113.    Plaintiff LICHUN HUO and the California Class suffered injuries caused by Defendants because (a) they would not have purchased the Products on the same terms absent Defendants' illegal and misleading conduct as set forth herein; (b) they paid a price premium for

the Products due to Defendants' misrepresentations that their Products are "Natural"; and (c) the Products did not have the ingredients, characteristics or benefits as promised.

114.    On or about January 13, 2015, prior to filing this action, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code § 1782(a). Plaintiff LICHUN HUO sent Defendant, COLGATE-PALMOLIVE COMPANY, on behalf of himself and the proposed Class, a letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff LICHUN HUO's letter is attached hereto as **EXHIBIT A.**

115.    Wherefore, Plaintiff LICHUN HUO seeks damages, restitution, and injunctive relief for these violations of the CLRA.

## COUNT IV

### Violation of California's Unfair Competition Law, California Business & Professions Code §§ 17200, et seq.

116.    Plaintiff LICHUN HUO realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further allege as follows:

117.    Plaintiff LICHUN HUO brings this claim individually and on behalf of the members of the proposed California Class for Defendants' violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.

118.    The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

119.    Defendants violated federal and California law because Defendants' representations in labeling, advertising, and marketing their Products as "Natural" were unfair, deceptive, and misleading.

120.    Defendants' business practices, described herein, violated the "unlawful" prong of the UCL by violating the federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et. seq.*, N.Y. State Education Law § 6815, N.Y. State Education Law § 6818, California Health and Safety Code §§ 111330 and 111730, the CLRA, and other applicable law as described herein.

121.    Defendants' business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' advertising is of no benefit to consumers.

122.    Defendants violated the "fraudulent" prong of the UCL by misleading Plaintiff LICHUN HUO and the California Class to believe that the "Natural" representations made about the Products were lawful, true and not intended to deceive or mislead the consumers.

123.    Plaintiff LICHUN HUO and the California Class members are not sophisticated experts about the corporate branding, labeling, and packaging practices of the Products. Plaintiff LICHUN HUO and the California Class acted reasonably when they purchased the Products based on their belief that Defendants' representations were true and lawful.

124.    Plaintiff LICHUN HUO and the California Class lost money or property as a result of Defendants' UCL violations because (a) they would not have purchased the Products on the same terms absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Products

due to Defendants' misrepresentations; and (c) the Products did not have the characteristics, benefits, or ingredients as promised.

## COUNT V

**Violation of California's False Advertising Law,
California Business & Professions Code §§ 17500, et seq.**

125.   Plaintiff LICHUN HUO realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further allege as follows:

126.   Plaintiff LICHUN HUO bring this claim individually and on behalf of the members of the proposed California Class for Defendants' violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

127.   Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

128.   Defendants engaged in a scheme of offering misbranded Products for sale to Plaintiff LICHUN HUO and the California Class members by way of making false and misleading representations that such Products are "Natural" on the Products' packaging and labeling. Such practice misrepresented the characteristics, benefits and ingredients of the misbranded Products. Defendants' advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, et seq. in that the product packaging was intended as inducements to purchase Defendants' Products. Defendants knew that these statements were unauthorized, inaccurate, and misleading.

41

129.    Defendants violated federal and California law because Defendants' representations in labeling, advertising, and marketing their Products as "Natural" were unfair, deceptive, and misleading.

130.    Defendants violated § 17500, et seq. by misleading Plaintiff LICHUN HUO and the California Class to believe that the "Natural" representations made about the Products were true as described herein.

131.    Defendants knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded, and that their representations about the naturalness of the Products were untrue and misleading.

132.    Plaintiff LICHUN HUO and the California Class lost money or property as a result of Defendants' FAL violations because (a) they would not have purchased the Products on the same terms absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Products due to Defendants' misrepresentations; and (c) the Products did not have the characteristics, benefits, or ingredients as promised.

## COUNT VI

### Violation of Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505, et seq.

133.    Plaintiff JOHN DOE (Illinois) realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

134.    Plaintiff JOHN DOE (Illinois) brings this claim individually and on behalf of the other members of the Illinois Class for violations of Illinois's Consumer Fraud and Deceptive Business Practice Act, ("ICFA"), 815 ILC § 505, et seq.

135.    Plaintiff JOHN DOE (Illinois) and Illinois Class members are consumers who purchased the Products for personal, family or household purposes. Plaintiff JOHN DOE (Illinois) and the Illinois Class members are "consumers" as that term is defined by the ICFA, 815 ILC § 505/1(e) as they purchased the Products for personal consumption or of a member of their household and not for resale.

136.    Products that Plaintiff JOHN DOE (Illinois) and other Illinois Class members purchased from Defendants were "merchandise" within the meaning of the ICFA, 815 ILC § 505/1(b).

137.    Under Illinois law, 815 ILC § 505/2, "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." By engaging in the conduct set forth herein, Defendants violated and continues to violate § 505/2 of the ICFA, because Defendants' conduct constitutes unfair methods of competition and unfair or deceptive acts or practices, in that they misrepresented that the Products have characteristics, benefits or ingredients which they do not have.

138.    Defendants' representations in labeling, advertising, and marketing their Products as "Natural" were unfair, deceptive, and misleading and constitute a deceptive act or practice under the ICFA.

139.    Defendants intended that Plaintiff JOHN DOE (Illinois) and other members of the Illinois Class rely on their deceptive act or practice.

140.    Defendants' deceptive act or practice occurred in the course of trade or commerce. "The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property...." 815 ILC § 505/1(f). Defendants' deceptive act or practice occurred in the advertising, offering for sale, sale, or distribution of the Products.

141.    Plaintiff JOHN DOE (Illinois) and the Illinois Class suffered actual damage proximately caused by Defendants because (a) they would not have purchased the Products on the same terms absent Defendants' illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Products due to Defendants' misrepresentations and deceptive packaging with "Natural" claims; and (c) the Products did not have the characteristics, benefits, or quantities as promised.

142.    Wherefore, Plaintiff JOHN DOE (Illinois) seeks damages, restitution, and injunctive relief for these violations of the ICFA.

## COUNT VII

### Violation of Texas' Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*

143.    Plaintiff JOHN DOE (Texas) realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

144.    Plaintiff JOHN DOE (Texas) brings this claim individually and on behalf of the Texas Class for Defendants' violations of Texas' Deceptive Trade Practices Act, §§ 17.41, *et seq.*

145.    The subject Products are "goods" under Tex. Bus. & Com. Code § 17.45(1) because they are tangible chattel.

146.    Each Defendants is a "person" under Tex. Bus. & Com. Code § 17.45(3) because it is a corporation.

147.     Plaintiff JANE DOE (Texas) and the other Texas Class members are "consumers" under Tex. Bus. & Com. Code § 17.45(4) because they bought or acquired the Products by purchase.

148.     At all relevant times, Defendants have engaged in "trade" and "commerce" under Tex. Bus. & Com. Code § 17.45(6) by advertising, offering for sale, selling and/or distributing the Products in the United States, including Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

149.     The allegations set forth herein constitute false, misleading or deceptive trade acts or practices in violation of Texas's Deceptive Trade Practices Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.*

150.     Defendants have made and continue to make deceptive, false and misleading statements concerning their Products, namely manufacturing, selling, marketing, packaging and advertising the Products with false and misleading statements concerning its characteristics, benefits and ingredients, as alleged herein. Defendants violated federal and Texas law because Defendants' representations in labeling, advertising, and marketing their Products as "Natural" were unfair, deceptive, and misleading.

151.     Plaintiff JOHN DOE (Texas) and other Texas Class members relied to their detriment on those false, misleading, and/or deceptive acts and practices.

152.     Defendants' false, misleading, and/or deceptive acts and practices were the cause of the economic damages sustained by Plaintiff JOHN DOE (Texas) and other members of the Texas Class.

153.     Defendants' violations of the DTPA were made in connection with the purchase of the Products by Plaintiff JOHN DOE (Texas) and other Texas Class members.

154. Plaintiff JOHN DOE (Texas) and other Texas Class members relied on Defendants to disclose material information they knew about and not induce them into transactions which they would not have entered had Defendants disclosed accurate information.

155. Plaintiffs ask that the Court enter judgment in favor of Plaintiff JOHN DOE (Texas) and the Texas Class and against Defendants for the following: injunctive relief against further violations, compensatory damages, punitive damages and such other relief as the Court deems proper.

## COUNT VIII

### Violation of Florida's Deceptive and Unfair Trade Practices Act,
### Fla. Stat. Ann. § 501.201, *et seq.*

156. Plaintiff JOHN DOE (Florida) realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

157. Plaintiff JOHN DOE (Florida) brings this claim individually and on behalf of the Florida Class for Defendants' violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, et seq.

158. Section 501.204(1) of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes "unfair or deceptive acts or practices in the conduct or any trade or commerce" in Florida unlawful.

159. Throughout the Class Period, by advertising, marketing, distributing, and/or selling the Products with the packaging with "Natural" claims, to Plaintiff JOHN DOE (Florida) and other Florida Class members, Defendants violated the FDUTPA by engaging in false advertising concerning the health and nutritional benefits of the Products.

160. Defendants have made and continue to make deceptive, false and misleading statements concerning their Products, namely manufacturing, selling, marketing, packaging and

46

advertising the Products with false and misleading statements concerning its characteristics, benefits and ingredients, as alleged herein. Defendants violated federal and Florida law because Defendants' representations in labeling, advertising, and marketing their Products as "Natural" were unfair, deceptive, and misleading.

161.    Plaintiff JOHN DOE (Florida) and other Florida Class members seek to enjoin such unlawful acts and practices as described above. Each of the Florida Class members will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that they will continue to be unable to rely on the Defendants' packaging misrepresenting the Products as "Natural."

162.    Had Plaintiff JOHN DOE (Florida) and the Florida Class members known the misleading and/or deceptive nature of Defendants' claims, they would not have purchased the Products.

163.    Plaintiff JOHN DOE (Florida) and the Florida Class members were injured in fact and lost money as a result of Defendants' conduct of misrepresenting the Products as "Natural" on its labeling and packaging. Plaintiff JOHN DOE (Florida) and the Florida Class members paid for Defendants' premium priced Products, but received Products that were worth less than the Products for which they paid.

164.    Plaintiff JOHN DOE (Florida) and the Florida Class seek declaratory relief, enjoining Defendants from continuing to disseminate their false and misleading statements, actual damages plus attorney's fees and court costs, and other relief allowable under the FDUTPA.

## COUNT IX

### Violation of Michigan's Consumer Protection Act,
### MCL §§ 445.901. et seq.

165.     Plaintiff LICHUN HUO realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

166.     Plaintiff LICHUN HUO brings this claim individually and on behalf of the Michigan Class for Defendants' violations under the Michigan Consumer Protection Act, MCL §§ 445.901. *et seq.* (the "MCPA").

167.     Defendants' actions constitute unlawful, unfair, deceptive and fraudulent actions/practices as defined by the MCPA, MCL §445.901, *et seq.*, as they occurred in the course of trade or commerce.

168.     As part of its fraudulent marketing practices Defendants engaged in a pattern and practice of knowingly and intentionally making numerous false representations and omissions of material facts, with the intent to deceive and fraudulently induce reliance by Plaintiff LICHUN HUO and the members of the Michigan Class. These false representations and omissions were uniform and identical in nature as they all represent that the Products as "Natural" when they are not.

169.     Defendants have made and continue to make deceptive, false and misleading statements concerning their Products, namely manufacturing, selling, marketing, packaging and advertising the Products with false and misleading statements concerning its characteristics, benefits and ingredients, as alleged herein. Defendants violated federal and Michigan law because Defendants' representations in labeling, advertising, and marketing their Products as "Natural" were unfair, deceptive, and misleading.

170.   Had Plaintiff LICHUN HUO and the Michigan Class known the misleading and/or deceptive nature of Defendants' claims, they would not have purchased the Products. Defendants' acts, practices and omissions, therefore, were material to Plaintiffs' decision to purchase the Products at a premium price, and were justifiably relied upon by Plaintiffs.

171.   The unfair and deceptive trade acts and practices have directly, foreseeably and proximately caused damage to Plaintiff LICHUN HUO and other members of the Michigan Class.

172.   The Defendants' practices, in addition, are unfair and deceptive because they have caused Plaintiff LICHUN HUO and the Michigan Class substantial harm, which is not outweighed by any countervailing benefits to consumers or competition, and is not an injury consumers themselves could have reasonably avoided.

173.   The Defendants' acts and practices have misled and deceived the general public in the past, and will continue to mislead and deceive the general public into the future, by, among other things, causing them to purchase Products with false and misleading statements concerning its characteristics, benefits and ingredients at a premium price.

174.   Plaintiff LICHUN HUO and the Michigan Class are entitled to preliminary and permanent injunctive relief ordering the Defendants to immediately cease these unfair business practices, as well as disgorgement and restitution to Plaintiff LICHUN HUO and the Michigan Class of all revenue associated with their unfair practices, or such revenues as the Court may find equitable and just.

## COUNT X

**Violation of New Jersey's Consumer Fraud Act,
N.J.S.A.56:8-1, *et seq.***

175.    Plaintiff JOHN DOE (New Jersey) realleges and incorporates herein by reference the allegations contained in all preceding paragraphs of this Complaint, as if fully set forth herein.

176.    Plaintiff JOHN DOE (New Jersey) bring this claim individually and on behalf of the other members of the New Jersey Class for violations of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

177.    At all relevant times, Defendants was and is a "person," as defined by N.J.S.A. 56:8-1(d).

178.    At all relevant times, Defendants' Products constituted "merchandise," as defined by N.J.S.A. 56:8-1(c).

179.    At all relevant times, Defendants' manufacturing, branding, labeling, packaging, sales and/or distribution of the Products at issue met the definition of "advertisement" set forth by N.J.S.A. 56:8-1(a).

180.    At all relevant times, Defendants' manufacturing, branding, labeling, packaging, sales and/or distribution of the Products at issue met the definition of "sale" set forth by N.J.S.A. 56:8-1(e).

181.    N.J.S.A. 56:8-2 provides that "[t]he act, use or employment by any person of any unconscionable practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission, ...is declared to be an unlawful practice..."

182.    Defendants have made and continue to make deceptive, false and misleading statements concerning their Products, namely manufacturing, selling, marketing, packaging and advertising the Products with false and misleading statements concerning its characteristics, benefits and ingredients, as alleged herein. Defendants violated federal and New Jersey law because Defendants' representations in labeling, advertising, and marketing their Products as "Natural" were unfair, deceptive, and misleading.

183.    As described in detail above, Defendants uniformly misrepresented to Plaintiff JOHN DOE (New Jersey) and each member of the New Jersey Class the Products' naturalness by means of their branding, labeling and packaging.

184.    Defendants have therefore engaged in practices which are unconscionable, deceptive and fraudulent and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission in their manufacturing, branding, labeling, packaging, selling and distribution of the Products. Defendants have therefore violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

185.    As a direct and proximate result of Defendants' improper conduct, Plaintiff JOHN DOE (New Jersey) and other members of the New Jersey Class have suffered damages and ascertainable losses of moneys and/or property, by paying more for the Products than they would have, and/or by purchasing the Products which they would not have purchased, if the quantity of the Products had not been misrepresented, in amounts to be determined at trial.

## COUNT XI

**Pennsylvania's Unfair Trade Practices and Consumer Protection Law,**
**73 Penn. Stat. Ann. § § 201-1, *et seq.***

186.    Plaintiff JOHN DOE (Pennsylvania) realleges and incorporates herein by reference the allegations contained in all preceding paragraphs of this Complaint, as if fully set forth herein.

187.    Plaintiff JOHN DOE (Pennsylvania) brings this claim individually and on behalf of the Pennsylvania Class.

188.    This is a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(xxi).

189.    At all relevant times material hereto, Defendants conducted trade and commerce within the meaning of the UTPCPL.

190.    Plaintiff JOHN DOE (Pennsylvania) and the Pennsylvania Class are "persons" as defined and construed under the UTPCPL.

191.    Defendants have made and continue to make deceptive, false and misleading statements concerning their Products, namely manufacturing, selling, marketing, packaging and advertising the Products with false and misleading statements concerning its characteristics, benefits and ingredients, as alleged herein. Defendants violated federal and Pennsylvania law because Defendants' representations in labeling, advertising, and marketing their Products as "Natural" were unfair, deceptive, and misleading.

192.    Defendants' conduct as set forth herein constitutes and unconscionable commercial practice comprised of deceptive acts or practices in violation of the UTPCPL, 73 P.S. § 201-2(xxi), including its practice of misleading consumers in the branding, packaging and labeling of its Products as described herein. Specifically, Defendants intentionally packaged the

Products with misrepresentations that the Products are "Natural" in an effort to deceive or mislead Plaintiff JOHN DOE (Pennsylvania) and other members of the Pennsylvania Class.

193.    Defendants' conduct as set forth herein has been unfair in violation of the UTPCPL because the acts or practices violate established public policy, and because the harm they cause to consumers in Pennsylvania greatly outweighs any benefits associated with those practices.

194.    As a direct and proximate result of Defendants' statutory violations, Plaintiff JOHN DOE (Pennsylvania) and the Pennsylvania Class members have been injured and suffered actual and ascertainable losses of money as a result of Defendants' unconscionable, deceptive, and/or unfair trade practices.

195.    As a result of the harm caused by Defendants' violation of Pennsylvania consumer protection law, Plaintiff JOHN DOE (Pennsylvania) and Pennsylvania Class members are entitled to recover compensatory damages, punitive damages, and attorneys' fees as set forth below.

## COUNT XII

### NEGLIGENT MISREPRESENTATION
### (All States)

196.    Defendants, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

197.    In making the false, misleading, and deceptive representations and omissions, Defendants knew and intended that consumers would pay a premium for "Natural" labeled products over comparable products that are not labeled "Natural" furthering Defendants' private interest of increasing sales for its Products and decreasing the sales of products that are truthfully offered as "Natural" by Defendants' competitors, or those that do not claim to be "Natural" .

198.    As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiffs and the other Class members in that they paid a premium price for Products that were not as represented.

199.    In making the representations of fact to Plaintiffs and members of the Class described herein, Defendants have failed to fulfill their duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendants' negligence and carelessness.

200.    Defendants, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

201.    Plaintiffs and members of the Class relied upon these false representations and nondisclosures by Defendants when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

202.    As a result of Defendants' wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Products and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

## COUNT XIII

### BREACH OF EXPRESS WARRANTIES
### (All States)

203.    Defendants provided Plaintiffs and other members of the Class with written express warranties, including, but not limited to, warranties that their Products have "Natural" ingredients.

204.    This breach resulted in damages to Plaintiffs and the other members of the Class who bought Defendants' Products but did not receive the goods as warranted in that the Products were not as healthy nor as pure as they appear to be.

205.    As a proximate result of Defendants' breach of warranties, Plaintiffs and the other Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Products that did not conform to what Defendants promised in their promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

### COUNT XIV

### UNJUST ENRICHMENT
### (All States)

206.    Plaintiffs reallege and incorporate by reference the above paragraphs as if set forth herein.

207.    As a result of Defendants' deceptive, fraudulent and misleading labeling, packaging, advertising, marketing and sales of Products, Defendants were enriched, at the

expense of Plaintiffs and members of the Class, through the payment of the purchase price for Defendants' Products.

208.   Plaintiffs and members of the Class conferred a benefit on Defendants through purchasing the Products, and Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefits conferred on it.

209.   Defendants will be unjustly enriched if they are allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendants and for which Defendants have been unjustly enriched.

210.   Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs, and all others similarly situated, in light of the fact Defendants have represented that the Products are "Natural," when in fact, the Products contain the above alleged unnatural ingredients.

211.   Defendants profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiffs and Class members, under circumstances in which it would be unjust for Defendants to be permitted to retain said benefit.

212.   Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and has lost money or property as a result of Defendants' actions, as set forth herein. Defendants are aware that the claims and/or omissions that they made about the Products are false, misleading, and likely to deceive reasonable consumers, such as Plaintiffs and members of the Class.

213.   Plaintiffs and Class members do not have an adequate remedy at law against Defendants (in the alternative to the other causes of action alleged herein).

214.    Accordingly, the Products are valueless such that Plaintiffs and Class members are entitled to restitution in an amount not less than the purchase price of the Products paid by Plaintiffs and Class members during the Class Period.

215.    Plaintiffs and Class members are entitled to restitution of the excess amount paid for the Products, over and above what they would have paid if the Products had been adequately advertised, and Plaintiffs and Class members are entitled to disgorgement of the profits Defendants derived from the sale of the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf themselves and all others similarly situated, seek judgment against Defendants, as follows:

A.    For an order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

B.    For an order declaring the Defendants' conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiffs and the nationwide Class;

D.    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief;

G.    For injunctive relief as pleaded or as the Court may deem proper;

H.    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I.      Any other relief the Court may deem appropriate.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury

trial on all claims so triable.

Dated: March 9, 2015

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

By: _____
        C.K. Lee

# EXHIBIT A

# LEE LITIGATION GROUP, PLLC

30 EAST 39TH STREET, SECOND FLOOR
NEW YORK, NY 10016
TEL: 212-465-1180
FAX: 212-465-1181
INFO@LEELITIGATION.COM

WRITER'S DIRECT:     212-465-1188
                     cklee@leelitigation.com

January 13, 2015

<u>*VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED*</u>

Legal Department
Colgate-Palmolive Company
300 Park Avenue
New York, NY 10022

> Re:     *Demand Letter re:*     **Tom's of Maine® Toothpastes**
>                                 (together, the "Products")

To Whom It May Concern:

This demand letter serves as a notice and demand for corrective action on behalf of my client, Lichun Huo and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act, violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5) and (9) and violations of consumer protection laws of each of the fifty states and the District of Columbia. This demand letter serves as notice pursuant to state laws concerning the breaches of express and implied warranties.

You have participated in the manufacture, marketing and sale of the Tom's of Maine® Toothpaste Products. The Products are falsely and misleadingly represented as "Natural" on their labeling and packaging even though they contain non-natural, highly chemically processed ingredients such as Glycerin and Sodium Lauryl Sulfate.  Such representations are false and misleading and violate consumer protection laws of each of the fifty states and the District of Columbia as well as Sections 502 and 602 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 352, 21 U.S.C. § 362, respectively. As a result, the Products are misbranded.

Ms. Lichun Huo, a resident of California, purchased the Tom's of Maine® Silly Strawberry Children's Fluoride toothpaste and the Outrageous Orange-Mango Children's Fluoride toothpaste Products and is acting on behalf of a class defined as all persons in each of the fifty states and the District of Columbia who purchased the Products (hereafter, the "Class").

To cure the defects described above, we demand that you (i) cease and desist from continuing to label and package the Products as "Natural"; (ii) issue an immediate recall on any Products with a false and misleading "Natural" representation; and (iii) make full restitution to all purchasers throughout the United States of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to the following:

(i)    All documents concerning the manufacture, labeling and packaging process for the Products;

(ii)   All communications with the U.S. Food and Drug Administration concerning the product development, labeling, packaging, marketing and sales of the Products;

(iii)  All documents concerning the advertisement, marketing, or sale of the Products; and

(iv)   All communications with customers concerning complaints or comments concerning the Products.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation. If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

C.K. Lee, Esq.

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®

NEW YORK NY 10022

| | | |
|---|---|---|
| Postage | $ $0.49 | 0016 |
| Certified Fee | $3.30 | 04 |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $6.49 | 01/13/2015 |

Sent To  Legal Dept (Colgate-Palmolive Co.)
Street & Apt. No., or PO Box No.  300 Park Avenue
City, State, ZIP+4  NY NY 10022

7014 2870 0000 2952 8797

PS Form 3800, July 2014        See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Legal Dept.
Colgate-Palmolive Co.
300 Park Avenue
New York NY 10022

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X SG                              ☐ Agent
                                  ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery
Jesse Guerrero

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☑ Certified Mail®      ☐ Priority Mail Express™
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)      ☐ Yes

2. Article Number
(Transfer from service label)    7014 2870 0000 2952 8797

PS Form 3811, July 2013        Domestic Return Receipt